735 P.2d 924 (1986)
In the Matter of the ESTATE OF Marie SCOTT, a/k/a Bartley Marie Scott, Deceased.
Robert E. BRICE and Mt. Sneffles Company, Claimants-Appellants,
v.
David G. WOOD, Personal Representative-Appellee.
No. 85CA0739.
Colorado Court of Appeals, Div. II.
December 31, 1986.
As Modified on Denial of Rehearing March 26, 1987.
*925 Cashen, Cheney, Johnston & Campbell, Donald E. Cashen, Montrose, for claimants-appellants.
Dufford, Waldeck, Ruland & Milburn, William H.T. Frey, Grand Junction, for personal representative-appellee.
SMITH, Judge.
The claimants, Robert E. Brice and Mt. Sneffles Company, appeal a judgment of the trial court dismissing their claims against the Estate of Marie Scott in which the court ruled that their claims were not timely filed and that it had no jurisdiction to consider them under § 15-12-803(2)(a), C.R.S. The claimants argue that their claims are excluded from the operation of that statute by § 15-10-201(6), C.R.S., or, alternatively, that if the claims are subject to § 15-12-803(2)(b), C.R.S., they were timely filed thereunder. We reverse and remand for consideration of the claims.
On February 17, 1982, pursuant to a contract entered into with claimant Brice, the Estate conveyed a portion of real property which the decedent had owned to Brice who thereafter conveyed the property to Mt. Sneffles. On June 9, 1982, the Estate conveyed the identical property to Mt. Sneffles by quitclaim deed.
The property description in each of these deeds is identical. It is undisputed that the description omits land which the parties intended to include, and includes land which they intended to exclude. It was stipulated that the errors in the deeds resulted from a mutual mistake of fact concerning the location of the property on the ground as reflected in a United States Geological Survey map having an erroneous delineation of the county and section lines.
In 1984 the same mistake in the legal description was carried forward into a deed given by the Estate to a third party conveying land adjoining the land sold to the claimants. This third party, however, caused a survey to be made based on the description contained in its deed and erected a fence on the boundary line as disclosed by the survey. Thus, the claimants and the estate then became aware of the mistaken property description contained in the deed.
The claimants thereupon filed their claims against the Estate seeking reformation of the deeds or, alternatively, for the imposition of a constructive trust on the funds paid to the Estate for the sale of the land to the third party. The Estate declined to reform its deed to the third party, and it rejected the claims of Brice and Mt. Sneffles as barred by the statute of nonclaims, § 15-12-803(2)(a), C.R.S.
The trial court ruled that the claims presented were barred, as untimely filed, by § 15-12-803(2)(a), C.R.S., holding that the performance due from the personal representative was the 1982 delivery of the deeds consummating the sale to the claimant Brice. This refusal to consider the claims is the subject of claimants' appeal.
*926 Because the statutory definition of the term "claim" contains exceptions which do not specifically address disputes concerning title which arise during administration of the estate, and because the decedent here had no title after her death, this dispute is a claim subject to § 15-12-803(2), C.R.S., which provides:
"All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:
(a) A claim based on a contract with the personal representative, within four months after performance by the personal representative is due;
(b) Any other claim, within four months after it arises."
By adopting the above portion of the non-claim statute that bars estate claims unless they are within four months after they arise, the General Assembly intended to promote speedy and efficient settlement of decedent's estates. In re estate of Daigle, 634 P.2d 71 (Colo.1981).
This time limitation of four months is much shorter than, and supersedes, all statutes of limitation which might otherwise have been applicable. Being jurisdictional, it constitutes an absolute bar which cannot be tolled or waived either intentionally or by implication. In re Estate of Randall v. Colorado State Hospital, 166 Colo. 1, 441 P.2d 153 (1968); Crowley v. Farmers State Bank, 109 Colo. 146, 123 P.2d 407 (1942). However, because the time is so short and the bar of the statute absolute, and because the statute is in derogation of common law rights which would otherwise exist, it must be strictly construed in favor of permitting consideration of all legitimate claims.
That the plaintiffs here may be entitled to some relief, if they can avoid the bar of the statute, is not in dispute. The deeds executed by the personal representative on behalf of the estate do not convey the property which the parties intended, and for which full payment was made. The parties have stipulated that the erroneous descriptions were the result of a mutual mistake of fact, both parties having relied on an erroneous survey map to arrive at the legal descriptions contained in the deeds. There likewise now exists no dispute as to what the correct legal description should have been. These are the precise type of circumstances under which equity can grant relief in the form of reformation of deeds such as those in question. Gullion v. Plymale, 168 Colo. 245, 450 P.2d 650 (1969); Dennett v. Mt. Harvard Development Co., 43 Colo.App. 422, 604 P.2d 699 (1979).
However, the question here presented is not whether claimants are entitled, in equity, to the relief they seek, but solely whether their claims were timely presented.

The Reformation Claim
The time within which an action for reformation must be commenced, absent a specific statute of limitation, is governed by the equitable doctrine of laches. DeForest v. Walters, 153 N.Y. 229, 47 N.E. 294 (1897); Wilson v. Wilson, 23 Nev. 267, 45 P. 1009 (1896). In general, laches cannot be imputed to one who has the right to the relief, until he discovers the fraud or mistake upon which his claim is based, and has a reasonable time thereafter within which to seek relief. Phoenix Chair Co. v. Daniel, 228 Ala. 363 (1834), 155 So. 579; Bank v. Barron, 182 Ark. 13, 31 S.W.2d 420 (1930); Parchen v. Chessman, 49 Mont. 326, 142 P. 631 (1914).
In certain situations, a party to an instrument is not required to assert his right to reformation until such time as the assertion of an adverse claim requires that he seek reformation to protect his rights. Griswold v. Hazard, 141 U.S. 260, 11 S.Ct. 972, 35 L.Ed. 678 (1891); Columbian National Life Insurance Co. v. Black, 35 F.2d 571 (10th Cir.1929). For example, one who has been in undisturbed possession of *927 land, such as claimants here, is not guilty of laches for not having previously sought reformation of his deed, provided he claims his right promptly after the intention to disturb his possession has been declared. Jones v. McNealy, 139 Ala. 379, 35 So. 1022 (1904).
In this case, both claimants and the estate agree that the mutual mistake in the deeds was not discovered by either of them until the estate conveyed the adjacent land to a third party on July 5, 1984, and the third party erected a boundary fence pursuant to an accurate survey. Claimants presented their claim to the estate on September 11, 1984, well within four months from discovery of the mistake. Thereafter, the estate offered rescission as a remedy. When this offer was refused the estate adopted its present position.
We hold that the claim was timely under § 15-12-803(2)(b), C.R.S. We hold that the performance due by the personal representative was not the original issuance of the deeds, but rather, it was the duty to reform the deeds, or otherwise correct the error, upon discovery of the mutual mistake. Also, we hold that under § 15-12-803(2)(b), C.R.S., the claim asserted by claimants did not arise until July 5, 1984, when the mistake was discovered. Thus, the claim was timely filed under § 15-12-803(2), C.R.S. To hold otherwise would cut off plaintiffs' rights even before they were aware of the existence thereof.

Constructive Trust Claim
We hold that the claim asserting the equitable right to imposition of a constructive trust was likewise timely filed under § 15-12-803(2)(b). That claim, which is alternative to the reformation claim, results from the fact that on July 5, 1984, the estate conveyed to a third party a portion of the land which it had originally agreed to convey to claimants and which was erroneously excluded from the original deeds. Claimant's entitlement, if any, to imposition of a constructive trust for its benefit, thus, could not have arisen unless, and until, the estate either received, or was entitled to receive, payment for the land to which claimants assert an equitable right.
The judgment is reversed and the cause is remanded to the trial court with directions to consider the merits of the claims, exercising the equitable powers inherent in it as a general jurisdiction court.
VAN CISE and KELLY, JJ., concur.